# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America,**<br>Plaintiff/Respondent<br>-vs-<br>**Joseph Nicholas Fuentes,**<br>Defendant/Movant | CV-08-0348-PHX-JAT (JRI)<br>CR-03-0764-PHX-JAT<br><br>**REPORT & RECOMMENDATION**<br>**On Motion to Vacate, Set Aside, or Correct Sentence**<br>**Pursuant to 28 U.S.C. § 2255** |

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on February 22, 2008 (CV#1). On September 12, 2008, Respondent filed its Response (CV#5). Movant filed a Reply on February 9, 2009 (CV#10).

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

The following summary of the factual background is based upon the narrative provided by Respondent in the Answer (#5). Movant does not challenge that narrative in his Reply (#10).

On May 9, 2001, inmate Jesus Lopez-Rocha ("Lopez") was stabbed to death in the yard of the Federal Correctional Institution in Phoenix, Arizona ("FCI-Phoenix"). An

- 1 -

investigation revealed Lopez had been convicted in a drug case which involved Movant and Movant's uncle, and that Lopez had purportedly testified against the uncle. When Movant discovered that Lopez was being transferred to FCI-Phoenix, Movant approached a leader of the Hispanic faction of the prison, Aguilar, about arranging to have Lopez killed.

Movant was instructed to talk to leaders of the Native American faction because Lopez was part Native American. Movant then spoke to co-Defendants Thomas, Pablo and Case, and offered to exchange heroin for the murder of Lopez. Thomas demanded proof that Lopez was a "rat", which Movant provided to Case, convincing the Native Americans that the murder would be justified.

In the meantime, co-Defendant Moore had also learned that Lopez was being transferred to FCI-Phoenix, and expressed concern to co-Defendant Thomas that because Moore and Lopez were from the same neighborhood that Moore would be tainted by Lopez' status as a "rat". Moore volunteered to take care of the hit on Lopez. Movant then delivered several balloons of heroin to co-Defendant Thomas which were delivered to Moore. Eventually, Moore stabbed Lopez who died as a result of his injuries.

**B. PROCEEDINGS AT TRIAL**

Movant was indicted on charges of murder and conspiracy to commit murder (CR#1). The indictment also named various co-Defendants, some of whom were dismissed, and others pled guilty. Movant and Defendants Moore, and Pablo proceed to trial.

Movant was convicted by the jury, and on May 31, 2005, and was sentenced to two concurrent life imprisonment terms for First Degree Murder and Conspiracy to Commit Murder. (CR#1097.)

**C. PROCEEDINGS ON DIRECT APPEAL**

Movant and co-Defendants Pablo and Moore filed a direct appeal, arguing the their trials should have been severed. The Ninth Circuit rejected that claim. Movant also argued: (1) prior conviction evidence as to Thomas and Aguilar was improperly excluded; (2) *Brady*

violations resulted from the Government's failure to disclose various evidence; (3) Movant's character evidence was improperly excluded; (4) there was a constructive amendment of the indictment or a material variance; (5) jury instructions on multiple conspiracies was inadequate. The Ninth Circuit rejected all of these claims and affirmed Movant's conviction and sentence.[1] (Memorandum Dec., CR#1171.)

.

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Motion** - Movant commenced the current habeas proceeding by filing his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on February 22, 2008 (CV#1).  Movant's Motion asserts two ground for relief: (1) ineffective assistance of counsel; and (2) prosecutorial misconduct.

**Response** - On September 12, 2009, the Government responded (CV#5), arguing that the claim of prosecutorial misconduct was procedurally defaulted by failure to raise it on direct appeal, and that the claims of ineffective assistance are without merit.  Respondent also argues that the claims of prosecutorial misconduct are without merit.

**Reply** - On February 9, 2009, Movant filed his Reply (CV#10), arguing the merits of all his claims, but not addressing the procedural default argument.

## III. APPLICATION OF LAW TO FACTS

## A.  PROCEDURAL DEFAULT

Respondent argues that the claims of prosecutorial misconduct in Ground 2 are procedurally defaulted because Movant did not raise these claims on direct appeal.  A section 2255 petitioner raising a claim for the first time in post-conviction proceedings is generally in procedural default, and is precluded from asserting the claim.  *Bousley v. United States*, 523 U.S. 614, 621(1998).

---

[1] Co-Defendant Moore's conviction was reversed based upon the exclusion of testimony of his mental health experts in support of his defense of diminished capacity. (CR#1171, Mem. Dec. at 6-7.)

However, in a federal prosecution, claims of ineffective assistance of counsel need not be exhausted on direct appeal, but are properly brought in the first instance in a motion to vacate "We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Accordingly, Movant's claims of prosecutorial misconduct in Ground 2 are procedurally defaulted, but his claims of ineffective assistance of counsel in Ground 1 are not.

"If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). Movant proffers no cause to excuse his procedural default, nor does he assert a claim of actual innocence to excuse his procedural default.

Accordingly, Ground 2 is barred and must be dismissed with prejudice.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant's Ground 1 asserts claims of ineffective assistance based upon trial counsel: (1) permitting a polygraph of Movant to be taken and admitted; (2) failure to adequately investigate and interview potential witnesses; (3) failure to retain an expert on prison life; (4) failing to object to the polygraph as flawed; (5) failure to object to admission of pictures of Movant's tattoos; and (6) failing to object to the dismissal of the first jury and jury pool.

### 1. Standard for Ineffective Assistance Claims

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. *Id.* at 687-88. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

A deficient performance is one in which counsel's errors were so great he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986). An objective standard applies to proving such ineffectiveness, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991)(quoting *Strickland*, 466 U.S. at 687-90)

**2. Parts 1 and 4 - Polygraph**

In part 1 of Ground 1, Movant argues that counsel was ineffective in counseling Movant to agree to take a polygraph examination, and then in permitting it to be admitted into evidence. Respondents counter that the polygraph was Movant's idea and was done at Movant's insistence, and in exchange for a stipulation that the results would be admissible. (Response, #5 at 17-18.) Movant Replies that counsel still had the obligation to insure that the polygraph was administered properly (CV#10 at 1-2). Movant requests an evidentiary hearing to develop facts to support the claim.

In part 4 of Ground 1, Movant argues that counsel was told by a professional that the polygraph was not up to standard, and he therefore should have objected to the admission of the polygraph. (CV#1 at Appendix A.) Respondents counter that defense counsel presented a polygraph expert at trial to challenge the polygraph, could not otherwise avoid the effect of the stipulation on its admissibility, and given the weight of the evidence against Movant, any failure was not prejudicial. (Response, #5 at 17-18.)

Movant fails to show that counsel was deficient in agreeing to the polygraph and its admission. Inherent in any such agreement is the risk that the polygraph will be conducted unfairly or that the results will be detrimental. The fact that those risks may have been realized does not establish that any advice to proceed was unjustified. A reviewing court is

not free to "second-guess" counsel's decisions or view them under the "fabled twenty-twenty vision of hindsight." *LaGrand v. Stewart*, 133 F.3d 1253, 1271 (9th Cir.1998) (internal quotation marks omitted), vacated on other grounds, *Stewart v. LaGrand*, 526 U.S. 115 (1999). Rather, the reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Movant offers nothing to suggest that, at the time the agreement to the polygraph was made, the decision was unreasonable. Accordingly, the undersigned concludes that Movant has failed to show that counsel performed deficiently in counseling Movant to take the polygraph.

Movant argues that, having agreed to the polygraph, counsel had an obligation to insure that it was fairly administered. Assuming *arguendo* that the polygraph was not fairly administered, Movant offers nothing to show that counsel had any advanced knowledge of any improprieties, or that the circumstances were such that counsel should have known that the polygraph would not be fairly administered. The polygraphs were administered by an FBI agent who had been trained in polygraph examinations. (CR#1086, R.T. 1/13/05 at 135-138.) Counsel was present for the procedure (*id.* at 148), although everyone other than the examiner and Movant were excluded from the room during the actual exam (*id.* at 195-196). Counsel had advised the examiner he wanted to be provided the notes, results, etc. (*id.* at 192-193), and discussed the form of questions with the examiner prior to the exam (*id.* at 201-204). Movant does not suggest anything additional counsel should have done. Accordingly, the undersigned concludes that Movant has failed to show that counsel performed deficiently in supervising the administration of the test.

Where the risk of an unfair polygraph actually comes about, reasonable counsel will act to avoid damage by either: (1) seeking to exclude the polygraph evidence; or (2) introducing evidence to discredit the polygraph. The former is problematic given the stipulation to admissibility. Courts are necessarily loathe to hear sour-grapes complaints, especially in light of a defendant's ability to challenge the reliability of the polygraph. *See e.g. Howard v. State,* 227 Ga.App. 5, 7, 488 S.E.2d 489, 491 (Ga.App.,1997) (agreement to

1 admission of polygraph enforceable absent "material breach"); Bockrath, *Admissibility of Lie Detector Test Taken upon Stipulation,* 53 A.L.R. 3d 1005, § 4.  That often leaves counsel with the option of seeking to discredit the examination.

Here, trial counsel pursued the latter and sought to impeach the polygraph examiner on cross-examination by  pointing out: the examiner's limited experience (CR#1086, R.T. 1/13/05 at 184-192); the examiner's failure to record the testing (*id.* at 193-195); the presence of noise from outside the room (*id.* at 196-197); the examiner's initial failure to disclose all his records (*id.* at 198-199); concerns about false indications of guilt because Movant had already admitted providing documents about the victim to those purportedly involved in the murder (*id.* at 201-204); the examiner's failure to adhere to various standards adopted by the Department of Defense and/or the polygraphers association, (e.g. spacing of questions, making markings on the polygraph charts for things like movement and breathing, use of preliminary acquaintance tests etc.) (*id.* at 204-219).

Moreover, trial counsel called an independent polygraph examiner, Sandra Gray, who he had retained to do a quality control review of Movant's polygraph examination. (CR#1087, R.T. 1/11/05 at 160.)  Gray testified to various standards applicable to testing, including use of acquaintance tests, minimizing disturbances, marking charts for movements, etc, timing of questions, etc.  (*Id.* at 164-175.)  She testified that she found the spacing of questions in Movant's testing to be "erratic," and especially short during the most relevant questions (*Id.* at 176, 180.)  She testified that the examination failed to meet the standards of the American Polygraph Association because of the lack of a score sheet, and standard chart markings. (*Id.* at 182.)  She also indicated the examination should have been recorded to insure that improper inflections were not utilized by the examiner.  (*Id.* at 182-183.)  Finally, she testified to the potential for false positive results.  (*Id.* at 183.)

Movant offers nothing to show that there was more that counsel should have done.

Movant does ask for an evidentiary hearing to obtain evidence to bolster his claims.  However, "merely conclusory statements in a § 2255 motion are not enough to require a hearing." *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969).  This does not,

however, "mean that the moving party must detail his evidence. It means only that he must make factual allegations." *Id.* Here, Movant offers no specific factual allegations to be proven at such a hearing. Rather he offers the conclusory claim that the polygraph was not "done properly" and requests a hearing in the hopes that he can "develope[sic] additional facts to prove this claim." (Reply, #10 at 1-2.) Movant is not, on that basis, entitled to an evidentiary hearing.

Movant has failed to show deficient performance by counsel with regard to the polygraph. Accordingly, parts 1 and 4 of Ground 1 and without merit.

### 3. Part 2 - Inadequate Investigation

In part 2 of Ground 1, Movant argues that counsel "did not investigate my innocence completely, and did not interview all the potential witnesses." (Motion, #1 at 5.)

In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the petitioner must show specifically what that investigation would have produced. A petitioner may not simply speculate about what a witness' testimony might be, but must adduce evidence to show what it would have been. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Here, Movant does not present any affidavits. Nor does he even speculate that the additional witnesses would have had favorable testimony. Movant simply posits that the witnesses had some type of information:

> Anthony.Frank had information about John.Yellowman involvement in the assault, that came from conversations Frank and Yellowman had at C.C.A. in 2003.
> Robert.Fitch a cellmate of Aguilar, prior to trial had information that was relevant to my defense.
> Tony.Guiterrez was named a "Lookout" by the Government key witness, at trial yet my attorney failed to follow up.

- 8 -

```
                              * * *
        Martin.Salazar, also has information that would be relevant to
    my case.
```

(Motion, #1 at 11.) Those bare assertions are not sufficient to show ineffective assistance by counsel in failing to pursue these witnesses.

Accordingly, part of Ground 1 is without merit.


**4.  Part 3 - Expert on Prison Life**

In part 3 of Ground 1, Movant complains that counsel failed to retain an expert on prison life and gangs to show his innocence and to impeach the government's witnesses. (Motion #1 at 5.) Conversely, he complains that counsel failed to call as a witness at trial John Kesos, the prison expert retained by counsel. (*Id.* at 11.) Movant argues that the expert could have shown that the victim's being labeled as a sex offender was a more likely reason for his murder than his being labeled as a snitch. (*Id.* at 12.)

Movant cannot simply rest on an unvarnished assertion that an expert witness would have shown his innocence or provided generic impeachment of other witnesses. *Grisby*, *supra*; *Ashimbi*, *supra*. The only specific testimony he suggests is about the possible reasons for the victim's murder. However, as pointed out by Respondents, trial counsel was able to elicit testimony on this point from the Government's witness, Forrest Barton, the Bureau of Prisons's Special Investigative Agent.

```
        Q. . . . When an inmate is coming in and being processed do you look
        to see whether or not it is safe for them to go into the general
        population?
        A.   That's a normal procedure that's taken care of by the case
        managers and the unit teams, yes.
        Q. In fact, if an inmate were to say, " I have co-defendants that I
        cooperated against here," that might impact that inmate's safety.
        A. Yes.
                * * *
        Q. . . . Another factor that a case agent may look at is whether or not
        an inmate is a sex offender.
                Correct?
        A.   That's one of the crimes we look at, yes.
        Q. Okay.
                In fact, sex offenders, their safety may be more in jeopardy than
        other types of offenders.
        A.   That's true.
```

(CR#1087, R.T. 1/11/05 at 88-89.)[2]

Liberally construed, Movant argues in his reply that an expert's opinion would have gone further in helping the "trier of fact to understand the evidence." (Reply, #10 at 4.)

However, Movant does not suggest how a prison expert could have gone beyond relating the same facts related by Barton, *i.e.* that the victim would have been in danger if labeled a sex offender. The pecking order within a prison is not so complex an issue that expert opinion would be necessary to comprehend it (as opposed to simply identifying it). Movant does not suggest what additional testimony could have been offered by the expert to move the jury further towards the inference that the victim was killed on that basis, and therefore not by Movant. While certainly there is no absolute bar on expert testimony on such ultimate facts, *see* F.R.E 704(a), Movant does not show how an expert could have had a basis for such an opinion, and thus have been admissible under F.R.E. 702 ("based upon sufficient facts or data").

Thus, the expert opinion urged by Movant would have merely been cumulative to the testimony by Barton. Counsel could have made a reasonable tactical decision to rely on the more credible first hand testimony from the government's own witness, Barton, rather than risk having Petitioner's expert cross-examined and potentially used to bolster the Government's own case if forced to admit the plausibility of the prosecution's theory of the case, *i.e.* that Petitioner arranged for the murder of the victim because the victim was a snitch. Accordingly, the undersigned concludes that Movant has failed to show that counsel performed deficiently by failing to present testimony of an expert witness.

Likewise, Movant fails to show prejudice from the failure to present such testimony. As noted, the testimony would have merely been cumulative, and of less weight than the other testimony on the issue. Moreover, it would not have directly refuted the government's

---

[2] Respondents argue Petitioner also offered testimony on these issues. (Response, #5 at 20.) However, the referenced testimony was largely limited to gangs and snitches. (CR#1086, R.T. 1/7/05 at 161-172, 180-181, 191-193, 196-197.) The only reference to sex offenders was a passing reference explaining why prisoners would want paper work on another prisoner. (*Id.* at 180-181.)

- 10 -

strong case against Movant, but would have simply been speculation on an alternative theory to explain the victim's murder.

Based on the foregoing, the undersigned concludes that Movant has failed to show both the deficient performance and the prejudice required to establish ineffective assistance of counsel on this basis. Accordingly, part 3 of Ground 1 is without merit.

### 5. Part 5 - Tattoo Pictures

In part 5 of Ground 1, Movant argues counsel was ineffective for failing to object to the admission of photographs of Movant's tattoos. Movant asserts the picture was irrelevant. (Motion, #1 at App. A.) Respondent argues the tattoos were relevant to Movant's membership in a prison gang, where Movant had denied such membership. Respondent also argues that counsel unsuccessfully objected to a second photograph of the tattoos. Finally, Respondent argues that the admission of the photographs was harmless given the other evidence on Movant's association with prison gang members. (Response, #5 at 20-21.) Movant replies that the photographs were irrelevant because Movant had denied being a gang member. (Reply, #10 at 4.)

To the contrary, rather than yielding the photographs irrelevant, Movant's denial of gang membership yielded the photos all more relevant.

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

F.R.E. 401. Movant's credibility was critical to the defense. The photographs served to impeach Movant. "The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." F.R.E. 401, Advisory Committee Notes.

Even apart from their impeaching character, the photographs were relevant to the extent that Movant's membership in a gang (or for that matter even his willingness to be connected with the gangs) served to bolster the prosecution's theory of the case and evidence

showing Movant's efforts to secure permission from the gangs to have the victim killed.

Accordingly, Movant has failed to establish that the photographs were irrelevant. Thus any objection on that basis would have been without merit. "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

Therefore, part 5 of Ground 1 is without merit.

### 6. Dismissal of Jury

In part 6 of Ground 1, Movant complains that counsel "failed to object to dismissing the 1st jury and jury pool." (Motion, #1 at App. A.) Respondent argues that contact between Movant's child's mother and various jurors tainted the jury and justified the dismissal. (Response, #5 at 21.) Movant replies that the allegations were unfounded, and denied Movant his right to a randomly selected jury. (Reply, #10 at 5.)

The record reflects that during *voir dire* process, various juror reported being spoken to about the case by a woman who was identified as Movant's child's mother. As a result, the entire jury panel was ultimately stricken. (CR#1072, R.T. 12/3/4.)

Movant bases his claim on 28 U.S.C. § 1861, which declares a federal policy that jury trial litigants "shall have the right to grand and petit juries selected at random from a fair cross section of the community." Movant also asserts that his constitutional rights were impacted. However, "[t]here is no constitutional right to a randomly selected jury." *U.S. v. Nelson,* 718 F.2d 315, 319 (9th Cir. 1983).

In essence, Movant simply complains that he didn't get a jury from the first panel, and had he the results of trial might have been different. However, no litigant has an absolute right to a particular jury panel. 50A C.J.S. Jury § 337 (Right to jury of original panel) and § 338 (Right to particular juror or jury).

Nor does the dismissal of an original jury effect the randomness of the jury. "It is clear from the legislative history of the Act that it 'does not insist upon randomness in the sense in which that term might be understood by statisticians'. All that is required is that the

1  names [be] selected by chance (i. e., at random) from the corresponding source." *U.S. v. Marcano,* 508 F.Supp. 462, 467 (D.C.Puerto Rico, 1980). Nor would a change in the specific jury effect its validity. "The fair cross-section rule is limited to the method of summoning the venire panel from which the petit jury is selected." *Harris v. Pulley,* 885 F.2d 1354, 1371 (9th Cir. 1988).

Movant does not assert that the second jury pool or the jury ultimately selected were not randomly selected, nor that the were not drawn from "a fair cross section of the community." Thus, Movant fails to establish that § 1861 was violated. Accordingly, any challenge by counsel would have been futile, and cannot constitute deficient performance. *Baumann*, 692 F.2d at 572.

Moreover, counsel did not merely fail to object to the striking of the panel. To the contrary he argued for it on the basis that the questioning of the jury panel about the issue had tainted them against the defense, given the presumption that the panel would assume it was a defendant who had promoted the improper contact. (CR#1072, R.T. 12/3/4 at 72-73.) Thus, counsel made a tactical decision in favor of striking the panel. Given the circumstances, not the least of which was the direct connection of the taint to Movant (as opposed to the other defendants), that tactical decision was reasonable. The fact that Movant may now disagree with the decision is irrelevant. "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).

With regard to prejudice, Movant offers no basis for his assertion that the results of a trial with a jury drawn from the first panel would have altered the outcome. Certainly, it could have been, but a mere possibility is not sufficient. Rather, Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Movant offers nothing to suggest such a probability.

Accordingly, Movant has failed to show both the requisite deficient performance and the requisite prejudice. Therefore, this portion of Ground 1 is without merit.

### 8. Summary re Ineffective Assistance

On each of the six parts of his Ground 1, Movant has failed to show the requisite deficient performance and/or prejudice. Accordingly, Ground 1 is without merit and should be denied.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Ground 2 (Prosecutorial Misconduct) of Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed February 22, 2008 (CV#1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed February 22, 2008 (CV#1) be **DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: October 16, 2009

_____
JAY R. IRWIN
United States Magistrate Judge